## Ahrens v. City of Louisville, etc.

(Decided January 23, 1920.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1.  Municipal Corporations—Sewage System—Bonds — Elections.— The words "the regular city election" in a statute authorizing an issue of bonds in cities of the first class for the extension of the sewage system, are not confined to the election next after the passage of the act, but refer to any regular city election, that is, any regular election at which city officials are to be chosen.

2.  Municipal Corporations—Statutes—Inadvertent Use of Words— Bonds.—In submitting to the voters the question of issuing bonds to be used for the extension of a sewage system, as authorized by an act of the legislature (stating its title), the mere inadvertent use of "May" for "March," in giving the date of approval, does not invalidate the bond issue, as the date of approval is not a part of the act and the mistake was inconsequential,

3. Statutes—Verbal Inaccuracies.—Mere verbal inaccuracies or cler-
   ical errors in statutes in the use of words, grammar or spelling
   will be corrected by the courts whenever necessary to carry out
   the plain intention of the legislature.
4. Appeal and Error—Defective Pleading—Issue of Bonds.—Affirm-
   ance of a judgment of the lower court sustaining a demurrer to
   a petition, does not carry with it a decision as to the validity of
   a certain bond issue which it was sought to enjoin. The petition
   being so defective as not to enable the court to know the char-
   acter or extent of the publication of an ordinance under which
   the bonds were to issue, the court expressly refrains from render-
   ing an opinion as to their validity.

W. W. DOWNING for appellant.

JOSEPH S. LAWTON and DAVIS W. EDWARDS for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

At an election held November 4th, 1919, there was
submitted to the voters of the city of Louisville the fol-
lowing question:

"Are you in favor of the issue by the city of Louis-
ville of bonds for two million ($2,000,000.00) dollars; as
provided in ordinance No. 143, series 1919, to be used
under an act of the General Assembly of the Common-
wealth of Kentucky, and entitled 'An act to enable cities
of the first class to construct an extension of their sys-
tems for the disposition of sewage, approved May 18,
1912?' "

The act referred to is a part of the charter of cities
of the first class and is found in subsection 16 of section
3037b, Kentucky Statutes.

An act of February 19, 1906 (Ky. Stats., sec. 3037b,
subsections 1-15), authorized an issue of four million
dollars of bonds by the city of Louisville for a similar
purpose. The validity of the first act was sustained by
this court in Miller v. City of Louisville, 30 Rep. 664, 99
S. W. 284.

In section 11 of the 1912 act it is provided that in
order to raise money for the construction of said sewer
system the general council may adopt an ordinance, sub-
mitting to the voters of the city, at the regular city elec-
tion, the question whether bonds of the city shall be is-
sued for the purpose of carrying out the work provided
for. Pursuant to said act the general council of the city
of Louisville, by an ordinance approved June 5, 1919,
authorized an issue of two million dollars of bonds for

the extension of its sewage system, the question of the issuance of the bonds to be submitted to the voters at the election to be held November 4, 1919.

Provision was made in said ordinance for the levying of an annual tax to pay the interest on said bonds and to create a sinking fund to pay the principal of the bonds at maturity.

In the sixth section of the ordinance, it is provided: " . . . and the mayor is hereby authorized and directed to give public notice of the time, place and purpose of the election upon said question or proposition for at least ten (10) days (exclusive of Sundays) prior to the day of election, in each of the daily morning and afternoon papers published in the city of Louisville, in which notice this ordinance shall be embodied."

At the election held as aforesaid 15,591 votes were cast in favor of the bond issue, 5,107 in opposition thereto; thus the proposition carried by more than the necessary two-thirds vote of those participating.

In this suit to enjoin the issue of said bonds it is contended:

1. That "the regular city election" referred to in the act means the next regular city election and no other.

2. In the question submitted to the voters the date of approval, of the act authorizing the issue of bonds was given as May 18, 1912, when it should have been March 18, 1912, and this invalidates the bond issue.

3. That the provision as to the publication of the ordinance in section six thereof was mandatory and the failure to meet the requirements of this provision is fatal to the validity of the bonds.

It is unnecessary to discuss a fourth point made by appellant as it is embraced within the three mentioned.

A demurrer to the petition was sustained, plaintiff (appellant) declined to plead further, the petition was dismissed and this appeal followed.

First. We find no merit in the contention that the words "at the regular city election" meant the next regular city election succeeding the passage of the act. At the time this act was passed the commissioners appointed under the earlier act of 1906 had not completed their duties and to enable the city, in the event it was thereafter deemed expedient to further extend its system of sewerage, the 1912 act was passed.

In the first act the date for holding the election was fixed, but not knowing when it might be decided to submit a similar question, the legislature purposely refrained from fixing any definite date, wisely leaving that to the excutive and administrative officers of the city. It was not until 1919, at a time when members of the general council were to be elected, and therefore a regular city election, that the authorities deemed it advisable and necessary to submit the question to the voters. The intent of the lawmaker is to be found in the language employed and we find no difficulty in ascertaining this intent.

The use of the word "the" in the statute did not mean any specific election other than a regular city election, and had the legislature intended otherwise, as contended by appellant, it would have followed the same procedure as in the earlier act and fixed the date thereof. Had "a" or "any" been substituted for "the" the statute could not have been plainer. It was the legislative intention to leave the matter of date to the discretion of the city authorities, the only qualification or limitation being that the question should be submitted to the voters not at any election, but at any regular city election, that is, at any election at which city officers are to be chosen.

Second. It will be noticed that in the question printed on the ballots, reference is made to the fact that the bonds were to be used under an act of the General Assembly of the Commonwealth of Kentucky entitled "An act to enable cities of the first class to construct an extension of their systems for the disposition of sewage, approved *May* 18, 1912." The recited date of approval was erroneous. The legislature was not in session in May of that year. The act referred to was approved March 18, 1912, and it is contended this invalidates the bond issue. With this contention we cannot agree. The date of approval is not a part of the act. It was the only act of like import passed since 1906. The title of the act was properly stated and the mere inadvertent use of May for March could not mislead the voters, nor could or would it in any wise invalidate or affect the issue of bonds thereunder. As a matter of fact in the ordinance proper section 1, the date of approval of the act is correctly stated, but in section 6, due to a mere typographical error, the approval is given as May 18, 1912, instead of March. Mere verbal inaccuracies or clerical errors in

statutes in the use of words, or in grammar, or spelling will be corrected by the courts whenever necessary to carry out the plain intention of the legislature. 36 Cyc. 1126-7. Endlich on Interp. of Statutes, sec. 319.

In Vincent v. Pacific Grove, 102 Cal. 405, 36 Pac. 773, the same question was raised relative to a resolution pertaining to certain street work. In stating the date of the passage of the resolution, through mistake the year was given as 1880, when it should have been 1890. The court held the mistake inconsequential; that it was not necessary for the date of approval to be published, the statute requiring merely that the resolution be published to test the validity of any bonds issued under the ordinance. See also Ryans v. Neutzel, 184 Ky. 292, 211 S. W. 852; Nichols v. Logan, 184 Ky. 711, 213 S. W. 181.

Third.  For the reasons presently stated we do not pass upon the question as to the effect of the alleged failure to publish the ordinance.

The lower court properly sustained the demurrer to the petition because it does not affirmatively show there has not been a substantial compliance with the ordinance as to publication. Then, too, there is a presumption that public officers have done their duty; hence it is upon one attacking an ordinance to show affirmatively and satisfactorily that it has not been published. Muir's Admr. v. City of Bardstown, 27 R. 1150, 87 S. W. 1096.

However, it is impossible for us to tell from the petition either the nature or extent of the publication. That some publicity was given in the daily press and perhaps by other means seems certain. Nor do we question that the parties have in good faith endeavored to apprise the court of all points and facts necessary to an intelligent decision affecting the validity of the bonds, but instead of facts, the petition on this point is rather a statement of conclusions. The allegations are indefinite and uncertain, so much so that we are unwilling to pass upon this phase of the case on the present state of the record.

We are fully cognizant of the importance of the question at issue, the security of the purchaser's investment, the maintenance of the city's good name, the imperative need and demand for extension of the city's sewage system, and the interest of the voter and taxpayer in incurring an indebtedness of two million dollars ($2,000,000.00), all of which convinces us that in affirming

the judgment we should determine merely the sufficiency of the petition and not the validity of the bonds.

The soundness of this conclusion is emphasized by the fact that the final judgment in this case will be conclusive upon the city and appellant, a taxpayer of the city, not only upon the questions decided, but upon all questions affecting the validity of the bonds which might have been raised and decided, assuming of course there has been a *bona fide* effort to submit all questions in any wise affecting the validity and marketability of the bonds. Home Construction Co. v. Duncan, 111 Ky. 914, 64 S. W. 997; City of Newport v. Newport National Bank, 148 Ky. 213, 146 S. W. 377. As said in the latter case:

"It will not do to say that a city may file a proceeding to test the validity of the bonds, and because only certain questions are raised and discussed, that the city, or any taxpayer, may thereafter attack the bonds upon other grounds not actually passed on and determined. If this were the rule, a judgment would never be *res adjudicata.*"

Stuessy v. City of Louisville, 156 Ky. 523, 161 S. W. 564, relied upon by appellee, involved the validity of certain school improvement bonds. The opinion discusses questions kindred to those presented by the present appeal, but the case is not directly in point. We call attention to the fact that the ordinance in the Stuessy case was passed when section 2774 Kentucky Statutes was in force, requiring all ordinances to be published in like manner as the proceedings of the general council, viz.: in the newspapers annually selected to do the city printing (Ky. Stats., sec. 2773.) By an act of 1918, section 2774 was repealed, hence when the present ordinance was passed June 5, 1919, there was no provision requiring its publication. The ordinance in the Stuessy case was published in full in the newspapers and the court held that five days' notice of the election was a sufficient compliance with the ordinance. The ordinance in the instant case referring to the instructions as to the publication, contains these words, not found in the ordinance in the Stuessy case, "in which notice this ordinance shall be embodied."

Since further litigation will be necessary to settle the question under consideration we suggest that in the new suit plaintiff allege specifically and in detail the character and extent of the publication

of the ordinance, together with any additional objections, facts or circumstances that might affect the validity of any bonds issued thereunder. And, to the end that the circuit court as well as this court might have all the assistance possible upon a resubmission, it would be well for counsel in briefing the case in addition to the authorities which they may have, the Stuessy, case, *supra,* and any others; to examine the following decisions which we have found in a cursory examination of the question: Reed v. City of Louisville, 22 R. 1636, 61 S. W. 11; Bybee v. Smith, 22 R. 1684, 61 S. W. 15; Central Construction Co. v. City of Lexington, 162 Ky. 286, 172 S. W. 648; City of Highland Park v. Reker, 173 Ky. 206, 190 S. W. 706; City of Newport v. Glazier, 175 Ky. 608, 194 S. W. 771; Hatfield v. City of Covington, 177 Ky. 124, 197 S. W. 535; National Bank of Commerce v. Town of Greneda, 44 Fed. 262; Vernakes v. City of South Haven, 186 Mich. 595, 152 N. W. 919; Athletic Association v. New Brunswick, 55 N. J. L. 279; State v. Dallis City, 72 Ore. 337, 143 Pac. 1127; City of Corinth v. Sharp, 107 Miss. 696, 65 Sou. 888; Gainesville Gas & Elec. Power Co. v. City of Gainesville, 63 Fla. 425, 58 Sou. 795; also McQuillen on Mun Corp. secs. 697, 698 and 699; Dillon on Mun. Corp., sec. 603; Cooley's Const. Lim. 109, 119.

While the conclusion reached necessitates an affirmance of the judgment, and it is so ordered, due to the insufficiency of the petition, we expressly refrain from expressing an opinion as to the validity of the proposed bond issue.