## BOEHME *v.* CITY OF MONROE.

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENT DISTRICT—REFERENCE TO PLAT.

Where under proceedings to pave a street, instituted by a city incorporated under the general law (1 How. Stat. chap. 80), a plat and diagram of the proposed improvement has been filed with the city clerk, in compliance with section 2645, which includes all the parcels of land abutting on the portion of the street that is to be paved, and gives the relative location of each lot or parcel, the lot numbers, the names of the various plats in cases where the land has been platted, the frontage and boundary lines of each parcel, and the name of the owner of each, a resolution of the council designating the district to be assessed as′ "all the lots, premises, and parcels of land fronting upon" such portion of the street, "as shown by a map of the proposed district on file in the office of the city clerk," sufficiently defines the assessment district.

2. MUNICIPAL CORPORATIONS—VALIDITY OF ORDINANCE—OMISSION OF CLERK.

A municipal ordinance is not invalidated because of the failure of the city clerk to certify thereon, or in the journal of the council proceedings, the time when such ordinance was presented to the mayor for his approval, and the time of the return thereof, as required by 1 How. Stat. § 2532, where the ordinance was otherwise regularly passed, approved, recorded, and published.

3. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—BOARD OF ASSESSORS.

1 How. Stat. § 2643, provides for a board of assessors to levy special assessments in cities incorporated under the general law, and, therefore, there is no necessity for the enactment of an ordinance providing for the creation of such a board, under section 2427.

4. SAME—OFFICERS DE FACTO.

Where the common council has assumed to appoint assessors under 1 How. Stat. § 2643, whether or not the persons so named were officers *de jure* will not be considered in a suit to restrain the collection of a special assessment made by them.

5. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENT
   DISTRICT—SUBMISSION OF BONDING PROPOSITION.

   The fact that a resolution of the common council, providing
   for the submission to the electors of a proposition to bond the
   city for the expense of paving a certain portion of a street,
   states that the owners of property abutting on such portion
   are to pay a specified percentage of the cost of the improve-
   ment, will not invalidate the assessment thereafter made, on
   the ground that it was left to the people to define the assess-
   ment district, where such district was afterwards established
   by the council, in accordance with 1 How. Stat. § 2644.

6. SAME—LIMITATION OF AMOUNT OF ASSESSMENT.

   A paving assessment which is divided into five annual install-
   ments, under 1 How. Stat. § 2658, none of which exceeds 5 per
   cent. of the assessed valuation of the property within the
   assessment district, is not in violation of section 2699, limiting
   the amount to be raised in any one year, in any special assess-
   ment district, to 5 per cent. of the assessed valuation of the
   property included therein.

7. SAME—ASSESSMENT BY FRONTAGE—RAILROAD COMPANIES.

   A railroad company is not liable to assessment for paving a
   street because its track is located therein, and abuts upon
   the section of the street so improved, although the assessment
   is made according to frontage.

8. SAME—VALUATIONS ON ROLL.

   Under 1 How. Stat. § 2649, requiring the board of assessors to
   enter upon a special assessment roll the valuation of each
   parcel within the district (as shown by the last preceding
   general assessment roll), the valuation of a parcel lying partly
   within and partly without the district may be apportioned,
   where it was assessed as one tract upon the general roll.

9. SAME—ISSUANCE OF BONDS—ENJOINING PAYMENT—EQUITY.

   An abutting owner, assessed for the paving of a street, cannot
   maintain a bill to enjoin the payment of bonds issued by the
   city to defray its proportion of the expense of the improve-
   ment, pursuant to a vote of the electors, on the ground that the
   city in fact paid a larger percentage of the cost than was
   specified to be paid by it in the resolution of submission.

10. SAME—VALIDITY OF BONDS.

    A resolution submitting to the electors the question of an issue
    of paving bonds provided that a certain percentage of the cost
    of the improvement should be paid according to frontage.
    The city owned a considerable extent of the frontage, and the

amount apportionable to it by reason of such ownership was made a general charge, reducing the percentage of the total cost actually assessed upon private property. All of the bonds were issued before the roll for the first installment of the assessment had been prepared, and the greater portion, before the amount to be specially assessed upon individual property had been ascertained. *Held,* that a bill would not lie to restrain the city from paying the bonds, on the ground that they were issued in violation of the vote of the electors.

Appeal from Monroe; Kinne, J. Submitted June 18, 1895. Decided September 26, 1895.

Bill by C. Augustus Boehme and others against the city of Monroe and others to restrain the collection of a special assessment, and for other relief in connection therewith. From a decree dismissing the bill, complainants appeal. Affirmed.

*Ira G. Humphrey (J. C. Knowlton,* of counsel), for complainants.

*C. A. Golden* and *A. B. Bragdon,* for defendants.

McGRATH, C. J. This is a bill filed to restrain the collection of a special assessment for paving First street, in the city of Monroe; to set aside the proceedings had therefor; and to restrain the collection of the bonds issued in payment for said improvement. The reasons given are as follows:

(1) Because the resolution of the council did not define the paving district.

(2) Because the ordinances were not approved in the manner required by the charter.

(3) Because there is no ordinance providing for the creation of a board of assessors.

(4) Because the vote for assessors was by ballot, and not by ayes and nays, and there was therefore no board of assessors.

(5) Because it was submitted to the people to define the pretended district.

(6) Because the tax exceeds 5 per cent. of the assessed

valuation of the pretended district, as assesssed for State and county taxation.

(7) Because the pretended assessment is made without any reference to benefits; neither is it according to frontage.

(8) Because the pretended board fixed their own valuations on many tracts.

(9) The bonds are illegal, and their payment should be enjoined:

(a) The improvement for which they were issued in payment is not a legal charge, either against the taxpayers or the city; therefore the council has no right to pay for the improvement.

(b) The bonds are issued in violation of the vote of the electors, which provided that the city at large should only pay for 65 per cent. of the cost of the improvement.

1. A plat and diagram had been filed with the city clerk, in compliance with 1 How. Stat. § 2645, which included all the parcels of land abutting on the street between the east line of East Chester street and the east line of Monroe street, giving the relative location of each lot or parcel; the lot numbers; the names of the various plats, where platted; the frontage and boundary lines of each parcel; and the name of the owner of each. The resolution of the council referred to the district as comprising—

"All the lots, premises, and parcels of land fronting upon First street, from the east line of East Chester street to the east line of Monroe street, as shown by a map of said proposed district, now on file in the office of the city clerk."

The plat or diagram is required to be made and filed for the very purpose of inspection, and it was entirely competent to further describe the lots or parcels of land and the district by reference to the plat. In *Whitney* v. *Village of Hudson*, 69 Mich. 189, cited by counsel for complainants, it is said:

"Had all the real estate abutting on the street been platted into village lots, and the plat recorded, and had the resolution described the real estate to be assessed as

all the lots and parts of lots fronting on or abutting on the street between certain points, according to the recorded plat, it would have definitely defined a district to be taxed."

2. It is admitted that the ordinances referred to were each presented to, and signed and approved by, the mayor, within the time prescribed by the statute, and that the same were recorded by the city clerk in the record of ordinances kept by him, and that in said record, and following each ordinance, are the following certificates, in form, to wit:

"Passed a regular session of the common council, Monday evening [date being given]. Presented to the mayor, and approved by him [date being given]."
(Signed by the city clerk.)
"I do hereby certify that the above ordinance was published on the [date being given] in the Monroe Democrat; also, on [date being given], in the Monroe Commercial,—two newspapers published in said city."
(Signed by the city clerk.)

It is further admitted that upon the original ordinances appears the following indorsement:

"The foregoing ordinance was presented to and approved by me this [giving date]."
(Signed by mayor.)

It is admitted that all of the records of council proceedings are signed by the city clerk, and signed and approved by the mayor.

The statute does not require that ordinances shall be recorded in the journal, but it does require that they shall be recorded "in a book to be called, 'The Record of Ordinances.'" 1 How. Stat. § 2534. The next section provides for the publication of ordinances, and for the clerk's certificate thereof. The time when the ordinances are to take effect is not made to depend upon the certificate of the clerk on the journal of the proceedings or on the ordinance, but is fixed by the ordinance itself. The approval of the mayor appears upon the original cr-

dinance, and the council afterwards acted under the same. The ordinance is not invalidated because of the failure of the clerk to perform the duty imposed upon him. *Stevenson* v. *Bay City*, 26 Mich. 44.

3. The statute (1 How. Stat. § 2643) provides for a board of assessors.

4. The statute provides that they shall be appointed by the council. The method of choice is not prescribed. In any event, the persons named were officers *de facto*, and in this proceeding the court will not consider whether or not they were officers *de jure*.

5. The question submitted to the people was the issue of bonds, and not the assessment district. The district was referred to in describing the improvement, and for the purpose of showing that a portion of the cost was to be defrayed by the persons immediately benefited thereby.

6. 1 How. Stat. § 2646, limits the amount to be levied by special assessment upon any lot, for any one improvement, to 25 per cent. of the assessed value, while section 2699 limits the amount to be raised in any one year, in any special assessment district, to 5 per cent. The amount levied for this improvement did not exceed 25 per cent. in any case, and the whole amount was divided into five installments of less than 2.2 per cent. of the valuation of the district. Sections 2658 *et seq.* contemplated the division of special assessments into not more than five installments, one of which shall be collected each year, and that special assessment rolls shall be made for each installment as the same shall fall due.

7. The cost of paving the intersections, as well as other public spaces, was paid out of the general fund. There is no force in the contention that, because a railroad company had its track in the street, it should have been assessed for the pavement thereof.

8. 1 How. Stat. § 2649, requires the assessors to enter upon each parcel of land within the district "the valuation thereof." When the assessors undertook to do this,

they found that certain of the lots fronting upon First street extended through to Second street, and that the assessment for State and county taxes included the entire parcel. The assessors apportioned the valuation, and reported that "that part of the tract or parcel of land within the paving district was appraised at such a proportion of the sum so assessed on the said ward rolls as we judged the value of the part within said district to bear to the value of the whole tract so assessed on said ward rolls." We have no doubt of the power to make such apportionment in such case.

9. The resolution submitting the question of the issue of bonds to the electors provided, in substance, that 35 per cent. of the cost of the improvement should be paid according to frontage. Of this frontage the city owned nearly 500 feet, and its proportion was made a general charge, reducing the percentage of the whole actually assessed upon private property. It appears, also, that, of the bonds, three-fifths had been issued before the assessment was made, or the amount to be specially assessed upon individual property had been ascertained, and all of the bonds had been issued before the roll for the first installment was prepared. Again, complainants have no equities. Their complaint seems to be that they have not been assessed as much as they should have been.

The decree dismissing the bill is affirmed, with costs to defendants.

The other Justices concurred.